# SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("**Agreement**") is made and entered into by and between Edwards James Gamble ("**Employee**" or "**Party**"), for himself, his heirs, administrators and assigns, on the one hand, and Air Serv Corporation for itself, its predecessors, successors and past, present and future parent, subsidiary or affiliate corporations, including, but not limited to, ABM Industries Incorporated and ABM Aviation, Inc., ("**Company**" or "**Party**") on the other hand (collectively **Employee** and **Company** referred to as "the **Parties**").

I.

WHEREAS, **Employee** was an employee of the **Company**, whose employment with the **Company** terminated on or around July 27, 2016.

WHEREAS, on or around December 14, 2016, **Employee**, on behalf of himself and all others similarly situated, filed a federal lawsuit against the **Company** with the United States District Court for the Northern District of Georgia, Civil No. 1:16-cv-04580-LMM (the "**Lawsuit**"), claiming that the **Company** violated his rights under the Fair Labor Standards Act ("**FLSA**"). **Employee** has sought lost compensation, liquidated damages, and attorneys' fees and costs.

WHEREAS, the **Company** denies **Employee's** allegations, and asserts that it in no way violated **Employee's** rights under the FLSA or any other statute, regulation, ordinance or principle of common law.

WHEREAS, **Employee** and the **Company** desire to settle fully and finally all differences between them, including, but in no way limited to, those differences arising out of, or in connection with, and/or relating to, **Employee's** recruitment, hiring, employment, compensation, employment termination and matters that could be asserted in the **Lawsuit**. **Employee** and the **Company** each view this settlement as advantageous and the **Parties** were represented by their respective counsel at all times in this Litigation and in the negotiation of this **Agreement**. **Employee** faces numerous and substantial risks in litigation, and the **Company**, while denying that it is liable to **Employee** and that it has committed any wrongdoing, also faces litigation risks and wishes to buy peace of mind and to avoid lengthy, costly, time-consuming and distracting litigation, to obtain full, final and complete settlement of **Employee's** claims, and to extinguish any liability under local, state or federal laws arising out of, in connection with, and/or relating to **Employee's** recruitment, hiring, employment, employment termination, and the matters that could be asserted in the **Lawsuit**.

II.

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth in this **Agreement**, intending to be legally bound, **Employee** and the **Company** each agree as follows:

EJG: *[initials]*

1.     No Admission of Liability:   The **Parties** acknowledge that the payment and acceptance of the **Settlement Sum** (defined below) and the execution of this **Agreement** are the result of compromise, that this **Agreement** is entered into in good faith, resulting from a *bona fide* dispute, and that this **Agreement** shall never be considered at any time or for any purpose as an admission of liability by the **Company** or that the **Company** acted wrongfully with respect to **Employee**, or any other person, or that **Employee** has any rights whatsoever against the **Company**. The **Company** specifically denies any liability to **Employee** on the part of itself, its employees, its agents, and its parent(s) or affiliated corporations and entities.

2.     Waiver of Future Employment:   The **Parties** agree that **Employee's** employment with the **Company** ended on or about July 27, 2016; that **Employee** will not be re-employed by the **Company**; and that **Employee** will not apply for or otherwise seek employment, directly or through any temporary agency or other provider or vendor, with the **Company** or any affiliated or related entity at any time. **Employee** further acknowledges that **Employee** will not provide services to the **Company** as an independent contractor or on behalf of any company or vendor. **Employee** acknowledges and agrees that **Company** has no obligation, contractual or otherwise, to hire, recall, rehire, or reemploy him in the future. **Employee** acknowledges and agrees that any actions taken pursuant to this provision cannot be used to, and shall not, establish the existence of, or constitute, any retaliation by the **Company** or its affiliates or agents.

3.     Settlement Payments:   In return for **Employee's** promises set forth in this **Agreement**, the **Company** agrees that, within 21 days of the Court granting final approval of this **Agreement**,   the **Company** will provide **Employee** with the following consideration ("**Settlement Sum**") to which **Employee** would not otherwise be entitled:

(a)   A payment to **Employee** in the gross amount of one thousand seven hundred fifty-dollars and no cents ($1,750.00) ("**Back Pay Payment**"). The **Company** will deduct from the **Back Pay Payment** such amounts as are required for federal, state and local taxes. The **Company** will include this **Back Pay Payment** in the **Company's** 2017 IRS Form W-2 for **Employee**.

(b)   A payment in the amount of three thousand five hundred dollars and no cents ($3,500.00), payable to Morgan & Morgan, P.A., for attorneys' fees and costs ("**Attorneys' Fees Payment**"). The **Attorneys' Fees Payment** shall not be considered as a payment of wages or as a substitute for wages. The **Company** will issue a 2017 IRS Form 1099-MISC to **Employee** and Morgan & Morgan, P.A., with respect to the **Attorneys' Fees Payment**. Morgan & Morgan, P.A. and the **Employee** shall each provide a completed IRS Form W-9 to the **Company** upon **Employee's** execution of the Agreement.

(c)   **Employee** shall assume all responsibility for and shall indemnify, defend and hold the **Company** harmless against and from any and all claims made by any taxing authority regarding the **Settlement Sum** or the allocation of the **Settlement Sum**. The indemnification shall apply to additional taxes against the **Company**, which **Employee** is obligated to pay, plus any penalties, assessments, and/or reasonable attorneys' fees incurred by the **Company** related thereto, provided, however, that the **Company**, not **Employee**, shall be

responsible for the payment of employer's portion of FICA. The **Company** makes no representations as to the taxable status of the **Settlement Sum** or any portion of it.

4.  Waiver and Release of Claims: As material inducement to the **Company** to enter into this **Agreement**, **Employee**, on behalf of himself, his heirs, estate, executors, administrators, trusts, representatives, successors and assigns:

(a) irrevocably and unconditionally releases, acquits and forever discharges the **Company**, and the **Company's** present, past and future parent, subsidiaries and affiliated corporations, divisions, affiliates, predecessors, principals, partners, joint venturers, representatives, successors and assigns and their past and present owners, directors, officers, employees, stockholders, attorneys, agents, benefit plans, insurers and reinsurers, and all persons acting by, through, under or in concert with any of them, (collectively, including without limitation the **Company**, referred to hereinafter as **"Releasees"**), individually and jointly, from all charges, complaints, promises, agreements, controversies, suits, rights, demands, costs, losses, debts, actions, causes of action, claims, judgments, obligations, damages, liabilities and expenses, including any claims for attorneys' fees and costs, of whatsoever kind and character, known and unknown, suspected and unsuspected, anticipated and unanticipated (collectively referred to as **"Claim"** or **"Claims"**), which **Employee** now has, owns or holds, or claims to have, own or hold, against each or any of the **Releasees** on or before the **Date of Execution** of this **Agreement**.

(b) fully, finally and forever waives any and all **Claims** that he has or may have against any and all **Releasees** based on any matter, transaction or occurrence arising at any time on or before the **Date of Execution** of this **Agreement**; and

(c) represents, warrants and covenants that **Employee** has not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity, any **Claims** against any **Releasee** or any portion thereof or interest therein; and

(d) understands and agrees that nothing in this **Agreement** is intended to, or shall, interfere with or affect each **Employee's** right to participate or cooperate in any federal, state, or local administrative or government agency (such as the Equal Employment Opportunity Commission or National Labor Relations Board) proceeding or investigation or to file a charge or claim with such an agency; and

(e) acknowledges and agrees that, should any government agency or other third party pursue any actions or other **Claims** on either **Employee's** behalf, **Employee** waives any right to recovery or monetary award from such actions or proceedings, except to the extent, if any, that such waiver is prohibited by law; and

(f) waives any right to become, and promises not to become, a member of any class or collective action proceeding or case against the **Company** or any **Releasee** based on any **Claim** that arises prior to the date **Employee** signs this **Agreement**, except where prohibited by law.

5. <u>Scope of Waiver and Release of Claims</u>: **Employee's** release and waiver of all known or unknown, suspected or unsuspected, anticipated or unanticipated **Claims** specifically includes, but is not limited to:

   (a) any **Claims** alleged or referred to, directly or indirectly, or in any way connected with, or arising out of, or which may hereafter be claimed to arise out of, the matters, facts, events or occurrences that could be alleged or referred to in the **Lawsuit**; and

   (b) any **Claims** or causes of action arising out of, in connection with or relating to **Employee's** recruitment, hiring, employment, compensation, and employment termination including, but not limited to: any **Claims** of employment discrimination, harassment or retaliation arising out of or relating to Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e <u>et seq</u>.) or any other anti-discrimination, whistleblower or anti-retaliation statute, regulation or ordinance; any **Claims** of violation of the Civil Rights Act of 1866 (42 U.S.C. §1981), the Age Discrimination in Employment Act of 1967 (29 U.S.C. §621 <u>et seq</u>.), the Americans with Disabilities Act (42 U.S.C. §12101 <u>et seq</u>.), the Family and Medical Leave Act (29 U.S.C. §2601 <u>et seq</u>.); any **Claims** arising under the Occupational Safety and Health Act of 1970 (29 U.S.C. §651 <u>et seq</u>.), the United States Equal Pay Act of 1963 (29 U.S.C. §206), the Racketeer Influence and Corrupt Organizations Act (18 U.S.C. §1961), <u>qui tam</u> **Claims** under the False Claims Act (32 U.S.C. §3730); any **Claim** for retirement, pension or other benefits under the Employee Retirement Income Security Act ("ERISA") (29 U.S.C. §1000 <u>et seq.</u>); any **Claims** arising under the Fair Labor Standards Act (29 U.S.C. §201 <u>et seq.</u>); any **Claims** arising under any federal, state, or local statute or regulation including, without limitations, wage payment and collection law, minimum wage and overtime laws; any **Claims** for unpaid or withheld wages, severance, benefits, bonuses, commissions and/or other compensation of any kind; and any **Claims** arising under any federal, state or municipal constitution, statute, regulation and/or ordinance; and

   (c) any **Claims** (i) sounding in tort, including, but not limited to, any torts related to wrongful discharge, harassment, negligence, intentional infliction of emotional distress, assault, battery, constructive discharge, defamation, interference with past, present or prospective contractual or business relationships, and tortious discharge in violation of public policy; (ii) sounding in contract, including, but not limited to, any contract of employment (express or implied); (iii) for breach of any covenant of good faith and fair dealing (express or implied); and (iv) under the common law of the United States, or any state in the United States.

   (d) provided, however, that this release and waiver of claims shall not apply to any rights or claims that are not waivable as a matter of law (specifically including claims to worker's compensation and unemployment compensation benefits), to **Employee's** rights to his vested benefits, if any, under the **Company's** pension plan and to his right to enforce this **Agreement**.

   (e) notwithstanding the foregoing, **Employee** and **Company** agree that **Employee** does not release any claims he may have against James Rankin, in his individual



capacity, for an alleged altercation that occurred between Mr. Rankin and **Employee** on July 28, 2016. Employee, however, releases **Releasees** from any claims arising out of or related to the July 28, 2016 altercation between **Employee** and Mr. Rankin.

6. Acknowledgement: The **Parties** intend that this Agreement comply with §201 of the Older Workers Benefit Protection Act of 1990 (29 U.S.C. §626). Accordingly, **Employee** knowingly and voluntarily agrees to waive any rights or claims arising out of or relating to the Age Discrimination in Employment Act ("**ADEA**"); and **Employee** acknowledges, warrants and represents as follows:

(a) **Employee** voluntarily waives any and all rights or **Claims** that he may have arising under ADEA;

(b) **Employee** has been informed of his right to consult with an attorney before executing this **Agreement** and further represents and warrants that he has, in fact, consulted with his attorney, Carlos Leach of Morgan & Morgan, P.A., regarding this **Agreement**, his rights and his waiver of ADEA rights;

(c) **Employee** knows and understands that he does not waive any rights or **Claims** that may arise after the **Date of Execution** of this **Agreement**;

(d) In exchange for the waiver of his rights under ADEA, **Employee** is receiving consideration in addition to any consideration to which he is already entitled;

(e) **Employee** has been informed of his right to have a reasonable period of twenty-one (21) days from the date of his receipt of this **Agreement** within which to consider his waiver of ADEA rights and **Claims** and **Employee** understands and acknowledges that, at his option alone, this **Agreement** may be executed prior to the expiration of the twenty-one (21) day period and that any changes to this **Agreement**, whether material or immaterial, will not restart the running of the twenty-one (21) day period;

(f) **Employee** has had a reasonable and sufficient period of time to consider this **Agreement**;

(g) **Employee** represents and acknowledges that he has also been informed of his right, for a period of seven (7) calendar days following the **Date of Execution** of this **Agreement**, to revoke this waiver ("**Revocation Period**") by providing written notice of such revocation to Daniel E. Turner, Esq., Littler Mendelson, P.C., 3344 Peachtree Road, N.E., Suite 1500, Atlanta, GA 30303, which is received prior to the end of the seven (7) day period, and that this **Agreement** shall not become effective or enforceable until the **Revocation Period** has expired; and

(h) In the event of any such revocation of this waiver contained in this paragraph, this **Agreement** and the obligations contained herein shall be null and void and of no further force and effect, including any obligation by the **Company** to pay the **Settlement Sum**.

Page 5 of 10

7.  Non-Disparagement: As a material inducement to the **Company** to enter into this **Agreement**, **Employee** agrees not to make any disparaging statements to any person or entity about the **Company**, its employees or agents, including, without limitation, the making of any disparaging statements to any current or former employee of the **Company** and any applicant for employment, any customer or client, and any prospective customer or client, and/or to otherwise attempt to injure or interfere with the **Company's** business. Nothing in this Agreement is intended to or shall be interpreted to restrict the parties' rights and/or obligations: (a) to testify truthfully in any forum; or (b) to contact, cooperate with or provide information to any government agency or commission.

8.  Neutral Reference: **Employee** will not direct any prospective employers to contact any **Company** employee or manager. Rather, **Employee** will direct any prospective employers to contact the **Company's** designated third party administrator that the **Company** uses for employment verification, currently Inverify, reachable on the internet at inverify.net and using the Company's employer code (112200). If **Employee's** prospective employer contacts the **Company's** designated third party administrator and provides the appropriate information, the prospective employer should be able to verify **Employee's** dates of employment and income (with **Employee's** express authorization). Information regarding eligibility for rehire will not be provided. The **Company** will exercise good faith efforts to provide only this information but, due to the size and number of employees at the **Company**, and due to the confidential nature of this settlement, the **Company** is not responsible for statements made by **Company** personnel if prospective employers contact anyone at the **Company** individually instead of third party administrator.

9.  Strict Confidentiality and Liquidated Damages: (a) **Employee** represents and warrants to keep the terms and amount of this **Agreement** completely and strictly confidential (except that **Employee** shall have the right to say "the matter has been resolved"), and will not thereafter disclose any information concerning this **Agreement** to anyone except as required by law, for specific legal and/or professional investment planning and advice, to **Employee's** spouse (if applicable), or to enforce this **Agreement**. **Employee** specifically agrees and represents that he will not disclose any information concerning this **Agreement** to any past, present or prospective employee or applicant for employment of the **Company**. **Employee** further represents that **Employee** has not, as of the date of this **Agreement**, disclosed the terms and/or the existence of this **Agreement** except as would have been authorized by this **Agreement**.

(b)  In the event that **Employee** is alleged to have breached the confidentiality terms of this **Agreement**, then the person or entity allegedly harmed (the "moving party") may commence appropriate legal action. If the moving party proves by a preponderance of evidence that **Employee** breached the confidentiality terms of this **Agreement**, **Employee**: (a) immediately shall pay liquidated damages in the amount of $2,500.00, to the moving party for each violation; (b) shall be enjoined from further breach; and (c) may be required by a court, in its discretion, to pay all costs and attorneys' fees incurred by the moving party in bringing such proceeding and to pay other damages, if any, as a result of the breach.

(c) Without limiting any of the foregoing, **Employee** agrees not to discuss or disclose, or authorize his agents or attorneys to discuss or disclose, orally or in writing, the terms and amount of this **Agreement** to any written, broadcast and/or electronic news. **Employee** agrees not to issue any press releases, and/or hold any press conferences, and further agrees that, in response to any inquiry regarding **Employee's Claims**, the **Lawsuit** and/or this **Agreement**, **Employee** will limit any response to saying "the matter has been resolved."

(d) **Employee** acknowledges and understands that his promises set forth above and elsewhere in this **Agreement**, including the foregoing promise to maintain confidentiality, are essential parts of this **Agreement**. **Employee** acknowledges and agrees that, if disclosure is made to any person or entity pursuant to paragraph 8(a) above, **Employee** will advise such person or entity that they are bound by the confidentiality clauses of this **Agreement**. **Employee** acknowledges and understands that any unauthorized disclosures by any such person or entity will be imputed to **Employee** and thereby subject **Employee** to liability under this **Agreement**.

(e) In the event **Employee** or his attorney receives a subpoena or other court order directing either one or both of them to disclose this **Agreement**, or the terms or amount of this **Agreement**, **Employee** shall immediately contact the **Company's** counsel, and shall as soon as reasonably possible, but in no event longer than 72 hours, provide said subpoena to counsel for the **Company**. **Employee** agrees to take all reasonable and diligent measures to assure that the **Company** is given the opportunity to oppose such subpoena or court order before any such information is disclosed. **Employee** shall cooperate fully with the **Company** should the **Company** object to the disclosure of such information.

10. Dismissal with Prejudice and Acknowledgement: As a material inducement to the **Company** to enter into this **Agreement**, **Employee** represents, warrants and covenants that he will withdraw, terminate and cause to be dismissed with prejudice any and all pending complaints, charges or lawsuits against any **Releasees**. **Employee** represents, warrants and covenants that he has not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity, any **Claim** against any **Releasee** or any portion thereof or interest therein.

11. Admissibility: The **Parties** agree that if this **Agreement** does not become effective for any reason, this **Agreement** shall be deemed to be negotiation for settlement purposes only and will not be admissible in evidence or usable for any purpose whatsoever.

12. Effect of Agreement: This **Agreement** may be pleaded as a full and complete defense to, and may be used as the basis for an injunction or bar against, any action, suit or other proceeding which **Employee** may institute, prosecute or maintain with respect to any matter, transaction or occurrence covered by this **Agreement**, and, as authorized by a court or other tribunal, **Employee** will pay the **Company's** attorneys' fees and costs associated with the defense of such action, suit or other proceeding. **Employee** intends that this **Agreement** have the effect of barring any such action, suit, or other proceeding. **Employee** acknowledges and agrees that nothing herein is meant to preclude the **Company** from recovering attorneys' fees or costs specifically authorized under federal or state law in any subsequent litigation against the

Company and/or Releasees. The Company is likewise not waiving its right to any restitution, recoupment, or setoff against Employee which is permitted by law should Employee later sue the Company based on claims released herein.

13.  Attorneys' Fees and Costs:   Employee acknowledges and agrees that the consideration set forth herein includes full and final payment of all attorneys' fees and costs incurred in connection with the Employee's Claims, the Lawsuit and negotiation, preparation and execution of this Agreement. The Parties further expressly acknowledge and agree that no party is a "prevailing party" or "successful party" for purposes of any further claim for statutory or contractual attorneys' fees or costs. A division, if any, of the Settlement Sum paid pursuant to this Agreement between Employee and anyone else, including his attorneys, shall in no way affect the validity of this Agreement. The Parties agree that the Settlement Sum includes any and all attorneys' fees and costs.

14.  All Compensation Due:  Employee agrees and acknowledges that he has received all compensation and benefits due him from the Company and that the Back Pay Payment constitutes full payment for all amounts that the Company, or any Releasee, might owe him as a result of his employment with and work for the Company, including, but not limited to, wages, overtime pay, salary, commissions, severance pay, vacation pay, holiday pay, medical, dental and vision benefits, short and long term disability benefits, pension contributions, 401(K) plan contributions, retirement benefits, deferred income, sick pay and any other fringe benefit of any kind whatsoever, further including without limitation, benefits under any "employee welfare benefit plan" and "employee pension benefit plan" as defined in ERISA. Employee specifically acknowledges and agrees that, given the existence of a bona fide dispute with regard to the hours he worked and any minimum wage and/or overtime pay allegedly owed, with receipt of the Back Pay Payment:

(a)  He will have been fully and accurately compensated for all hours that he worked during his employment, or thereafter, with the Company; and

(b)  He will have received at least minimum wage payments for all hours that he worked during his employment, or thereafter, with the Company; and

(c)  He will have received all overtime pay that is due to him for all overtime hours that he worked during his employment, or thereafter, with the Company; and

(d)  He will have received payment in an amount equivalent to any and all liquidated damages that he might otherwise have been entitled to receive by pursuing the claims asserted in his Lawsuit or any other existing or potential Claims against the Company.

15.  Severability:  Should any provision of this Agreement be determined by any court to be illegal, invalid or unenforceable, the validity of the remaining parts, terms or provisions shall not be affected thereby, and said illegal or invalid part, term or provision shall be deemed not to be part of this Agreement; provided, however, that if any portion of, or provision set forth in, paragraphs 4, 5 and 6 of this Agreement is determined by any court to be illegal, invalid, or in

any way ineffective as to any **Claim** by **Employee, Employee** will repay to the **Company** the amount of the **Settlement Sum**.

16. Governing Law and Construction: This **Agreement** is made and entered into in the State of Georgia, and shall in all respects be interpreted, enforced and governed under the laws of Georgia, without regard to its conflict of laws rules. The drafting and preparation of this **Agreement** is the result of the efforts of both **Parties** and the language of all parts of this **Agreement** shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the **Parties**.

17. Representation: **Employee** represents and acknowledges that in executing this **Agreement**, he does not rely, and has not relied, upon any representation or statement made by any of the **Releasees** or by any of the **Releasees'** agents, representatives or attorneys with regard to the subject matter, basis or fact of this **Agreement**.

18. Binding Nature and Third Party Beneficiaries: This **Agreement** shall be binding on **Employee** and on his heirs, estate, administrators, representatives, executors, successors and assigns, and shall inure to the benefit of all **Releasees**, and each of them, and to their heirs, estates, administrators, representatives, executors, successors and assigns. The **Releasees** are intended third party beneficiaries of this **Agreement**.

19. Date of Execution: The date of the last signature placed on this **Agreement** shall be known as the "**Date of Execution**" of this **Agreement**.

20. Modification/Amendment: This **Agreement** may not be amended or modified in any respect whatsoever, except by a writing duly executed by **Employee** and the **Company**, and **Employee** and the **Company** each agree that they will make no claim at any time that this **Agreement** has been orally amended or modified. No oral waiver of any term shall be effective for any purposes.

21. Representations and Warranties: **Employee** and the **Company** each represent, acknowledge and warrant that:

(a) Each has read this **Agreement**;

(b) Each has made such investigation of the facts pertaining to this **Agreement** as each deems necessary;

(c) Each understands all of the terms of this **Agreement**;

(d) Each executes this **Agreement** freely, voluntarily and without coercion, with full knowledge of its significance and the legal consequences thereof;

(e) Each has been represented by counsel and each has had an adequate opportunity to review and consider the terms of this **Agreement**;

(f)     **Employee** intends to release the **Company** and the other **Releasees** from any liability for the matters covered by this **Agreement**;

(g)     **Employee** agrees that **Employee** is receiving adequate consideration for the release of claims and is being fully compensated for the **Claims** released; and

(h)     The only promises made to each of the **Parties** to induce execution of this **Agreement** are those stated in this **Agreement**.

22.     Final Approval Required: The parties recognize that this **Agreement** will not become operative unless or until the Court grants final approval of it, and the **Agreement** becomes effective. If the Court denies final approval of the **Agreement** for any reason, this **Agreement** will be null and void and any party may file a notice to reopen the Lawsuit.

23.     Entire Agreement: This **Agreement** sets forth the entire agreement between the **Parties** and fully supersedes all other oral and written understandings or agreements between the **Parties** pertaining to the subject matter of this **Agreement**. The terms of this **Agreement** are contractual and not mere recitals.

24.     Counterparts. This **Agreement** may be executed in any number of counterparts with the same effect as if all the signatures on such counterparts appeared on one document, and each such counterpart shall be deemed to be an original. Delivery of a facsimile or electronic copy of an executed counterpart shall be as effective as a delivery of a manually executed counterpart of this **Agreement**.

EDWARDS JAMES GAMBLE

DATED: 03/13/2017

_____
Edwards James Gamble

ABM AVIATION, INC.

DATED: 03/20/17

By: _____
Name: Kevin R Brown
Title: VP Finance